# In the United States Court of Federal Claims

| | |
|---|---|
| **DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY,** *Plaintiff,* v. **THE UNITED STATES,** *Defendant.* | No. 18-1586 (Filed: July 3, 2024) |

*Emil Hirsch*, Carlton Fields, P.A., Washington, D.C., for Plaintiff.

*Vincent D. Phillips, Jr.*, Senior Trial Attorney, *Claudia Burke*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, and *Brian M. Boynton*, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**HADJI,** *Judge*.

This matter involves a dispute between the District of Columbia Water and Sewer Authority (Plaintiff or DC Water) and the Armed Forces Retirement Home of Washington, D.C. (the Government or AFRH) regarding the obligation of AFRH to pay DC Water for water and sanitary sewer services provided in fiscal year 2021.[1] Before the Court is the determination of the proper damages award pursuant to this Court's decision dated September 10, 2021 (the Entitlement Opinion), which held that DC Water is entitled to damages from the United States on behalf of AFRH. *D.C. Water and Sewer Auth. v. United States*, 156 Fed. Cl. 20, 66 (2021) (*DC Water I*). DC Water seeks $633,150.91 in damages. Pl.'s Br. at 11, ECF 117. AFRH challenges this amount, arguing that: (1) AFRH is exempt from payment by virtue of a statutory exception not addressed in the Entitlement Opinion; and (2) in the event the Court finds that AFRH is not exempt from payment, only $607,496.79 is directly attributable to sewer services and thus recoverable pursuant to the

---

[1] The Armed Forces Retirement home is "an independent establishment of the executive branch" of the United States, created to provide "residences and related services for certain retired and former members of the Armed Forces." *See D.C. Water and Sewer Auth. v. United States*, 156 Fed. Cl. 20, 26 (2021) (*DC Water I*); 24 U.S.C. § 411 (2018).

Entitlement Opinion. *See generally* Def.'s Supp. Resp., ECF 146; Def.'s Resp. at 3, ECF 119. For the reasons stated below, the Court awards DC Water $633,150.91 in damages.

## BACKGROUND

The section of the Entitlement Opinion titled "Findings of Fact" is fully incorporated herein by reference. As is relevant here, in 2018, DC Water filed a claim against AFRH in the United States District Court for the District of Columbia, which was transferred to this Court. ECF 1. In its Complaint, DC Water alleged that AFRH was required, and failed, to pay for water and sewer services that DC Water provided. Am. Compl., ECF 20. AFRH responded that it was not obligated to pay for these services pursuant to an agreement in 1938 between the parties' predecessors in interest, which AFRH alleges granted it free water and sewer services in perpetuity in exchange for permitting DC Water to build and access a water distribution reservoir on AFRH's property. *DC Water I*, 156 Fed. Cl. at 50. DC Water argued that this 1938 agreement did not include the provision of sewer services, and even if it had, the agreement was superseded by the District of Columbia Public Works Act of 1954 (the 1954 Act), which obligated all federal entities, including the AFRH, to pay for the services rendered by DC Water. *Id*.

AFRH filed a Motion to Dismiss pursuant to Rules 12(b)(1) and (6) of the Rules of the Court of Federal Claims.[2] ECF 23. Thereafter, DC Water filed a Motion for Summary Judgment. ECF 41. Subsequently, the parties stipulated to dismiss two counts of the Complaint. *DC Water I*, 156 Fed. Cl. at 42. After stipulation, the only remaining issue was nonpayment of sewer services. *Id*. On September 10, 2021, this Court (Horn, J.) issued the 2021 Entitlement Opinion, granting in part and denying in part both parties' motions. *See id.* at 66. The Court held that the 1938 Agreement did not exempt AFRH from sanitary sewer services in perpetuity because of the "broad and mandatory" language of the 1954 Act which equally obligates the AFRH to pay for services rendered as it does for other agencies. *Id*. As such, the Court held the AFRH was obligated to pay DC Water for the sanitary sewer services it rendered to AFRH, so long as DC Water adhered to the requirements of the 1954 Act by providing AFRH with annual prospective cost estimates as outlined in Section 212 of the 1954 Act. *Id*.; D.C. Code § 34-2112(b)(2).

After carefully reviewing DC Water's compliance with Section 212(b)(2), the Court found DC Water only complied with the statutory requirements for the 2021 fiscal year, by filing the required Federal Cost of Service Estimate (FCSE) in 2019 (2019 FCSE). *Id*. at 55-56, 66. Because the Court found that DC Water did not comply with Section 212(b)(2) in any year except for 2021, it concluded that DC Water is only entitled to payments for that year. *Id*. at 66. As such, the Court held that DC Water is "entitled to the amount listed, in its 2019 FCSE submission, which was estimated to be due by the AFRH for the fiscal

---

[2] Rules 12(b)(1) and (6) of this Court are identical to Federal Rules of Civil Procedure 12(b)(1) and (6). *Compare* Rules 12(b)(1) and (6) *with* Fed. R. Civ. P. 12(b)(1) and (6).

year of 2021, less stormwater charges…."[3] *Id*. Although the parties entered into lengthy settlement negotiations, the parties were unable to resolve their differences on damages, and the Court ordered the parties to brief the issue of damages consistent with the Entitlement Opinion. ECF 111 at 2. In June 2023, the parties completed briefings on the issue of damages. ECF 117, 119, 121, 129, 131. Following these briefings, this matter was reassigned to the undersigned. ECF 139. In February 2024, the Court ordered supplemental briefing to determine whether, as argued by the Government in its damages briefing, a statutory exception exempts the AFRH from payment of water and sewer charges. ECF 142. Briefing on this issue concluded in April 2024. ECF 145, 146, 150.

## DISCUSSION

The only issue before the Court is the amount of damages, if any, due under the Entitlement Opinion.[4] The first two sections of this opinion address two distinct questions of statutory interpretation that may affect the final damages award. In the first section, the Court reaffirms its previous holding that all sanitary sewer services rendered to AFRH by the District are predicated on the value of water and water services received. In the second section, the Court addresses the applicability of a payment exception for certain water and water services furnished to the United States. Because the Court did not previously address the applicability of this exception to the relevant charges, it does so here.

The third section addresses damages—specifically, the proper amount of damages, if any, DC Water is entitled to as a result of AFRH's nonpayment for sanitary sewer services. In total, DC Water seeks damages in the amount of $633,150.91. Pl.'s Br. at 11, ECF 117. This amount represents charges correlated to the consumption of sewer services, in addition to metering fees, right of way (ROW) fees, and payment in lieu of taxes (PILOT) fees. Pl.'s Br. at 11, ECF 117. In disputing this amount, the Government: (1) challenges DC Water's damages calculation and argues that DC Water may not recover the metering fees, ROW fees, and PILOT fees that it deems ancillary and impermissible pursuant to the Entitlement Opinion; (2) disputes DC Water's apportionment of these fees; and (3) contests DC Water's claim to fee penalties for late payment because they were not raised in the Entitlement Opinion. Def.'s Resp. at 8-14, ECF 119.

### I.  Construction and Operation of the Statutory Framework

As a preliminary matter, the Court will summarize the statutory framework that guides its review. In 1954, Congress passed the District of Columbia Public Works Act of

---

[3] The Court dismissed DC Water's claim for stormwater charges, without prejudice, after finding that: (1) Section 212 of the 1954 Act did not allow for the recovery of stormwater charges; and (2) DC Water had failed to allege or establish that it is entitled to stormwater charges under 33 U.S.C. § 1323. *DC Water I*, 156 Fed. Cl. at 66.

[4] Without actually filing a motion for reconsideration, AFRH effectively asks the Court to reconsider its summary judgment holding and deny DC Water's Motion for Summary Judgment. Def.'s Sur Reply at 13-14, ECF 129. For the reasons described herein, the Court sees no basis to do so.

3

1954, Pub. L. No. 83-364, 68 Stat. 101 (1954), as amended and codified in the Code of the District of Columbia (D.C. Code) at § 34-2101, *et. seq*. The passage of the 1954 Act marked the first time the United States was to be charged for sewer services. *DC Water I*, 156 Fed. Cl. at 33. The amended provisions of Section 212 of the 1954 Act (Section 212 or the Sewer Mandate) are incorporated into the D.C. Code at § 34-2112, titled: "Sanitary sewer service charges for United States government." Section 212(a), in its entirety and as currently amended, reads:

> The sanitary sewer service charges prescribed herein shall be applicable to all sanitary sewer services furnished by the sanitary sewage works of the District through any connection thereto *for direct use* by the government of the United States or any department, independent establishment, or agency thereof, and such charges shall be *predicated on the value of water and water services* received by such facilities of the government of the United States or any department, independent establishment, or agency thereof from the District water supply system. Payment of the said sanitary sewer service charge shall be made as provided in subsection (b) of this section.

D.C. Code § 34-2112(a) (emphasis added). Section 212(b), as currently amended and codified, imposes a specific set of instructions on (1) the Secretary of the Treasury, (2) the District, and (3) each Federal entity receiving sanitary sewer services from the District to effectuate payment for rendered services. D.C. Code § 34-2112(b).

In a similar fashion, the 1954 Act requires the United States to pay for water and water services rendered to it by the District. The amended provisions of Section 106 of the 1954 Act (Section 106 or the Water Mandate) are incorporated into the D.C. Code at § 34-2401.25, titled: "Water and water service supplied for the use of the government of the United States." Section 106(a), as currently amended and codified, reads:

> All water and water services furnished from the District water supply system through any connection thereto for direct use by the government of the United States or any department, independent establishment, or agency thereof, situated in the District, *except water and water services furnished to the United States for the maintenance, operation, and extension of the water system*, shall be paid for at the rates for the furnishing and readiness to furnish water applicable to other water consumers in the District.

D.C. Code § 34-2401.25(a) (emphasis added). Reading D.C. Code Sections 34-2112 and 34-2401.25 together—and construing the plain language—the United States is required, provided certain procedural prerequisites are met, to pay for all sanitary sewer services

4

rendered to it by the District, absent an applicable exception (as discussed below). The cost of such services is to be "predicated on" what DC Water charges the United States for water and water services, which is equivalent to what DC Water charges the public. This conclusion aligns with the Court's prior holding in the Entitlement Opinion. *DC Water I*, 156 Fed, Cl. at 48.

Although the Court previously ceased its analysis there, the Court now goes one step further to analyze the statutory basis for the rates charged to the public. As Plaintiff notes, the general methodology for determining sanitary sewer charges is governed by Section 207 of the 1954 Act. Section 207(a)(1), as amended and codified in D.C. Code § 34-2107, provides as follows:

> The sanitary sewer service charges established under the authority of this subchapter shall be based on the following: (1) A billing methodology which takes into account both the water consumption of, and water service to, a property and the amount of impervious surface on a property that either prevents or retards the entry of water into the ground as occurring under natural conditions, or that causes water to run off the surface in greater quantifies or at an increased rate of flow, relative to flow present under natural conditions.

D.C. Code § 34-2107(a)(1). Section 207(b) further provides that:

> [n]otwithstanding the provisions of subsection (a), the Council of the District of Columbia is authorized, in its discretion, from time to time to establish 1 or more sanitary sewer service charges at such amount as the Council, on the basis of a recommendation made by the Mayor, finds it necessary to meet the expense to the District of furnishing sanitary sewer services, including debt retirement.

D.C. Code § 34-2107(b). Since the enactment of the Home Rule Act in 1973, the D.C. Council has delegated to DC Water the authority to establish sanitary sewer service charges and other charges. *See* District of Columbia Home Rule Act, Pub. L. No. 93-198, 87 Stat. 774 (1973); Water and Sewer Authority Establishment and Department of Public Works Reorganization Act of 1996, D.C. Law 11-111, § 203(11) (1996) (codified as amended at D.C. Code § 34-2202.03(11)). Rates for sewer service and other charges are currently set forth in Title 21 of the District of Columbia Municipal Regulations. *See, e.g.*, 21 DCMR § 4101 (Rates and Charges for Sewer Service).

Plaintiff seeks to relitigate the first part this statutory interpretation scheme, maintaining that the Water Mandate has no bearing whatsoever on sanitary sewer charges. Instead, Plaintiff contends that the statutory analysis should be confined to those statutory provisions which clearly and expressly deal with sanitary sewer services, and that any provisions that address "water and water services" are immaterial to the determination of

5

whether Plaintiff is owed for sanitary sewer charges. Pl.'s Opp. to Sur-Reply at 6-9, ECF 131. Plaintiff argues that any valuation of sanitary sewer service charges against the United States should proceed directly to Section 207, which sets forth the general methods of determination for sanitary sewer service charges. *Id.*; Pl.'s Supp. Reply. at 5, ECF 150.

This argument fails for two reasons. First, Congress clearly repudiated this approach through later amendments. Under the original 1954 Act, Section 212(a) explicitly directed that payment of the sanitary sewer service charge be determined in the manner described in Section 207. Pub. L. No. 83-364, § 212(a), 68 Stat. 108 (1954) (amended 1989). ("*Provided*, That the aggregate amount of such sanitary sewer service charge for each fiscal year shall be determined in the manner prescribed in Section 207 hereof …."). However, in 1989, Congress amended Section 212 of the 1954 Act by striking the reference to Section 207,[5] evincing intent that the basis for sewer charges charged to the United States not rely solely on Section 207. Pub. L. No. 101-168 § 133, 103 Stat. 1280 (1989). Put another way, the rewording of Section 212 to omit reference to Section 207 is powerful evidence that Congress no longer wished to tie the Government's sanitary sewer charges solely to the billing methodology described in Section 207.

Second, it is axiomatic that "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one." *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974). In this case, Section 207 is of general application, addressing the basis for charges for most customers, while Section 212 is a specific provision that applies to a specific customer—the U.S. Government. As such, Section 207 cannot supersede the specific mandate in Section 212 to predicate sewer charges to the Government on the value of water and water services received, which, as discussed above, is governed by the Water Mandate and its exception. In cases where the exception does not apply, the United States is required to pay the same rates as other water consumers in the District, and Section 207's more general methodology for determining sanitary sewer charges thus enters the calculus.

The Court likewise rejects Plaintiff's argument that the Sewer Mandate's language predicating sanitary sewer charges on the value of water and water services refers not to the Water Mandate, but "only as to measurement of volumentric consumption." Pl.'s Supp. Br. at 9, ECF 145. In interpreting the meaning of a statute, a material variation in terms suggests a variation in meaning. *See Intel Corp. v. Qualcomm Inc.*, 21 F.4th 784, 793 (Fed. Cir. 2021) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law* 170 (2012)). In this case, Plaintiff's interpretation of Section 212 is refuted by the language of the immediately preceding Section. Specifically, Section 211 considers the issue of sanitary sewer service

---

[5] In relevant part, Pub. L. No. 101-168 § 133 provided: "(a) It is the purpose of this section to improve the means by which the District of Columbia is paid for water and sanitary sewer services furnished to the Government of the United States … (c) Section 212 of the District of Columbia Public Works Act of 1954 (68 Stat. 108; D.C. Code, sec. 43-1612) is amended by—(1) striking in subsection (a) all that follows ': Provided, That'"

charges for certain churches and institutions and provides that such charges "shall be predicated only on the *quantity of water* used in excess of the amount fixed by the Mayor in each case as to which no water charge is made." D.C. Code § 34-2111 (emphasis added). Had Congress intended for Section 212 to tie the Government's sewer charge only to the quantity of water, it presumably would have done so in the same manner as it did in the immediately preceding section. But it did not. Instead, Section 212 uses the term "value" instead of "quantity." The Court presumes that such a choice was intentional, as "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.'" *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

Accordingly, the Court applied the correct statutory framework by reading the Sewer Mandate and Water Mandate together. Sanitary sewer charges due from the United States are "predicated on the value of water and water services" received by the United States, which is paid at the same rates applicable to the District's water consumers, unless an exception applies. The Court next considers one possible exception to this general payment scheme.

## II.   Applicability of the Exception Clause

The Water Mandate contains an exception clause (the Exception), which excludes any charges for "water and water services furnished to the United States for the maintenance, operation, and extension of the water system." D.C. Code § 34-2401.25. Because the Court did not address this Exception in its prior Entitlement Opinion, it does so now. As an initial matter, the Court agrees with the Government that the Exception applies to both water and sewer services. Because sewer charges against the Government are "predicated on the value of water and water services," any exception that applies to water charges must apply to sewer charges as well.

The question remains, however, whether the Exception applies to the sewer charges in this case. The Government argues that the Exception effectively incorporates the parties' 1938 Agreement, in which AFRH agreed to let DC Water build a reservoir on its land in exchange for free water and water services (and by extension, sanitary sewer services) in perpetuity. Def.'s Supp. Resp. at 9-16, ECF 146. According to the Government, the underground reservoir "extended" the reserve capacity of the water system through the new underground reservoir system. *Id.* at 4. Therefore, the Government argues, water and water services were and continue to be furnished to the United States for the express purpose of "extending" the water system. *Id.* at 3. In the Government's view, "[t]he statutory language answers the question [of whether water and water services furnished to AFRH fall under the Exception] definitively" and "[t]here is no way to divorce the 1938 Agreement from the current state of affairs." *Id.*

"As with any question of statutory interpretation, our analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). "The plainness

7

or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). "If the statutory language is plain, the Court must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015).

It is beyond dispute that nowhere in the statute is AFRH (including any of its predecessors-in-interest) or the 1938 Agreement mentioned or even alluded to. *DC Water I*, 156 Fed. Cl. 33; D.C. Code § 34-2101, *et. seq*. Had Congress intended to incorporate the 1938 Agreement and exempt AFRH from payment entirely, it could have done so by expressly identifying AFRH by name or referencing the 1938 Agreement. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). It did not do so. As such the Government's interpretation of the Exception runs afoul of the general maxim that Congress does not "hide elephants in mouseholes." *See id.* The failure to articulate an explicit exception for AFRH is especially pronounced given that Congress knew how, and did, recognize exemptions in other sections of the 1954 Act. *See, e.g.*, Section 211, as currently amended in D.C. Code § 34-2111 (recognizing the District's authority to waive water charges to churches and other institutions and providing that sanitary sewer service charges applicable to such churches and institutions "shall be predicated only on the quantity of water used in excess of the amount fixed by the Mayor"). In sharp contrast, the statutory language concerning services to the Government is devoid of any indication that Congress intended to permanently exempt any federal entity from payment. Furthermore, the Court is unaware of—and the parties have not cited—any legislative history that would indicate otherwise. Accordingly, the Court cannot find that Congress intended to exempt the AFRH from payment in perpetuity via the Exception in the 1954 Act.

Having found no express exclusion for AFRH in the statute, the Court turns to whether AFRH's water usage meets a condition necessary to trigger the Exception—services furnished for the maintenance, operation, and extension of the water system.

In this case, the parties seemingly agree that applicability of the Exception turns on the term "extension" and whether the reservoir qualifies as such. *See* Pl.'s Supp. Reply at 2, ECF 150 ("For the Exception to apply at all … the Reservoir would have to qualify as an 'extension.'"); Def.'s Supp. Resp. at 2, ECF 146 ("This exception applies to the AFRH through, at a minimum, the 'extension of the water system' language."); *Id.* at 7-8 (conceding Plaintiff's interpretations of "operation" and "maintenance" are reasonable). Still, the accompanying terms "operation" and "maintenance" are nevertheless instructive. The Court applies the principle of *noscitur a sociis*, "a word is known by the company it keeps." *Yates v. United States*, 574 U.S. 528, 543 (2015). When a word appears in a list of similar terms, each term should be read in light of characteristics shared by the entire list to 'avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Id.* (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). Consider the context in which water is provided for the "operation" and "maintenance" of the water system. DC Water has submitted affidavits showing that it performs "periodic

8

flushing of the water system to remove sediment and improve water quality." *See, e.g.*, Hughes Decl. ¶ 6, ECF 145-2. DC Water also "performs flow-testing on the water system to determine whether available water pressure is sufficient to meet water demand and to provide for fire service needs." *Id*. ¶ 7. DC Water avers that these activities are typical examples in which water is provided for the "operation" and "maintenance" of the water system and thus not charged to consumers.[6] Pl.'s Supp. Br. at 4, ECF 145.

It is difficult to square these relatively isolated and limited exemptions with the Government's reading of the Exception clause, which according to the Government, memorialized the 1938 agreement in which DC Water agreed to provide free water in perpetuity in exchange for an easement to build a reservoir. It simply goes too far to say that a clause which ordinarily exempts payment for "flow-testing" and "periodic flushing" also exempts an entire Government agency or organization from charges relating to all water and water services in perpetuity through a bargained-for exchange. Ultimately, the Government's interpretation of the Exception is divorced from "the [statutory] language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. 341.

The Government maintains that rejecting its interpretation would essentially render the term "extension" meaningless and strike it from the text. Def.'s Supp. Resp. at 7-8, ECF 146. The Court disagrees. There are clear instances where DC Water furnishes water and water services for the extension of the water system. For example, DC Water has shown that it "performs post-construction flushing when *extending* a water main or service," such as "when new buildings are constructed or repairs are made to infrastructure." Hughes Decl. ¶ 8, ECF 145-2 (emphasis added). In these instances of flushing, DC Water not only furnishes water for the "operation" and "maintenance" of the water system, but for its "extension" as well. In those limited circumstances, the Exception would apply and, per DC Water's representation, the United States would presumably be under no obligation to pay for water and water services used for such purposes.

Finally, even if the Exception in some way contemplated the possibility of exempting an entire Government agency or organization from all water and water services through a bargained-for exchange, the exchange at issue here has been nullified. For the reasons outlined by the Court in the Entitlement Opinion (and incorporated in full herein), the 1954 Act nullified the 1938 Agreement's perpetual grant of free water and water services to AFRH.[7] *DC Water I*, 156 Fed. Cl. at 50-54 ("As currently amended by

---

[6] The Court expresses no opinion on the Government's rate of payment under an applicable exception. However, as Plaintiff acknowledges, "[i]nsofar, as section 34-2401.25(a) and other parts of Title 34 do not provide for a different rate at which water/water services within the Exception are to be paid for, the clear implication is that such water and water services within the Exception are to be provided for free. Indeed, DC Water has never charged the Government for anything within the scope of the Exception." Pl.'s Supp. Br. at 4, ECF 145.

[7] The parties do not dispute that Congress had the power to abrogate the parties' 1938 Agreement via an act of Congress. *See, e.g.*, Pl.'s Supp. Br. at 10, 12, ECF 145; Def.'s Supp. Resp. at 13, ECF 146.

Congress, the AFRH, along with all other United States entities situated within the District … are required to pay for water and sewer services received, in accordance with the express provisions of the 1954 Act."). Once superseded by statute, the parties' arrangement exchanging land use for free water and water services ceased to exist, effectively eviscerating any claim that any water and water services now furnished to AFRH are for the purpose of the "maintenance, operation, and extension of the water system."[8] For the foregoing reasons, the Exception does not affect any of the disputed charges in this matter.

### III. Permissibility of the Claimed Charges

Having found that the Exception does not apply, the Court next turns to the permissibility of the claimed damages. In addition to fees derived from the direct consumption of sewer services, DC Water maintains that it is entitled to collect fifty percent of the corresponding metering fees, ROW fees, and PILOT fees (together, the ancillary fees) but concedes that the remaining fifty percent is attributable to water services, which DC Water may not recover. Pl.'s Br. at 9-10, ECF 117. Specifically, DC Water requests the following damages:

|  | Total Fee | Fee Request After Apportionment |
|---|---|---|
| Direct Cost of Sewer Services[9] | $607,496.79 | $607,496.79 |
| Metering Fees[10] | $8,813.40 | $4,406.70 |
| ROW Fees[11] | $11,371.86 | $5,685.93 |
| PILOT Fees[12] | $31,122.99 | $15,561.49 |
| **TOTAL REQUEST** |  | **$633,150.91** |

---

[8] The Court notes that the parties have raised concerns regarding the status of the reservoir on AFRH's grounds. Such concerns are beyond the scope of this action and thus are not addressed here.

[9] The parties agree that this total figure was reached by multiplying AFRH's total water consumption of 59,851.9 Ccf by the sewer rate set by the DC Water of $10.15/Ccf. ECF 83 at 2; Pl.'s Br. at 5, ECF 117.

[10] According to DC Water, the metering fee listed above accounts for monthly charges attributed to three separate meters: the 10" x 2" meter at $403.62, the 2" meter at $7.52, and the 8" x 2" meter at $323.29. See Pl.'s Br. at 8, ECF 117. Per the 2019 FCSE, the annual charge for the 2" meter totaled $90.48, representing a monthly charge of $7.54. The meter fees are set by the DC Water Board of Directors. Id.

[11] DC Water represents that the DC Water Board of Directors set the ROW Fee at $0.18/Ccf for the 2019 fiscal year and $0.19/Ccf for the 2020 fiscal year, which resulted in a rate of $0.19/Ccf for the 2021 fiscal year. Khalil Aff. ¶¶ 20-21, ECF 90-1. The AFRH water consumption of 59,851.9 was then multiplied by the $0.19/Ccf rate and equaled $11,371.86 for the total ROW fee. Id. at ¶ 21.

[12] DC Water explains that the DC Water Board of Directors approved and adopted PILOT Fee rates for the fiscal years 2019 and 2020, which resulted in DC Water's FCSE containing a PILOT Fee rate of $0.52/Ccf for the 2021 fiscal year. Khalil Aff. ¶¶ 25-26, ECF 90-1. DC Water states that this fiscal year 2021 fee was multiplied by AFRH's water consumption of 59,851.9 Ccf to get a total PILOT fee of $31,122.99. Khalil Aff. ¶¶ 25-26, ECF 90-1.

Because the Court has found that the statutory scheme mandates that the cost of sanitary sewer services are predicated on the value of water and water services, which are to be charged at the same rate as the public, it follows that sewer services are to be charged to the public at the same rate as well. To understand the costs charged to the public for sewer services, the Court turns to the general provision governing the determination of sanitary sewer services—Section 207.

As noted above, Section 207 mandates that:

> the Council of the District of Columbia is authorized, in its discretion, from time to time to establish 1 or more sanitary sewer service charges at such amount as the Council, on the basis of a recommendation made by the Mayor, finds it necessary to meet the expense to the District of furnishing sanitary sewer services, including debt retirement.

D.C. Code § 34-2107(b). Along with the fees for direct sewer services, the contested ancillary fees (Meter Fees, ROW Fees, and PILOT Fees) were all established by DC Water pursuant to authority delegated to it from the Council of the District of Columbia, and thus those fees are permitted under the broad discretionary powers granted to the Council by Section 207 or the Board's general power to establish charges. *See* Water and Sewer Authority Establishment and Department of Public Works Reorganization Act of 1996, D.C. Law 11-111, § 203(11) (1996) (codified as amended at D.C. Code § 34-2202.03(11)). It therefore follows that because DC Water charges these ancillary costs to the public, it may charge them to AFRH as well, so long as no other bar remains to their recovery.

AFRH presents one possible bar to recovery. While reserving its right to appeal liability and damages, AFRH acknowledges that certain costs, valued at $607,496.79, directly correlate to sanitary sewer service charges and are thus allowable under the Court's Entitlement Opinion. Def.'s Resp. at 9, 14, ECF 119. However, the Government argues that DC Water may not recover the ancillary fees that it deems impermissible. *Id.* at 8-14. In making this argument, the Government points to the language of the Sewer Mandate, which, as amended and codified, states that "[t]he sanitary sewer service charges prescribed herein shall be applicable to all sanitary sewer services furnished by the sanitary sewage works of the District through any connection thereto for *direct* use by the government of the United States or any … independent establishment" and that the charges "shall be predicated on the *value of water and water services* received." D.C. Code § 34-2112(a) (emphasis added).

The parties disagree as to the meaning of the term "direct" in Section 212 and its impact on the damages calculation. According to AFRH, the term "direct" limits the amount that may be recovered to only those charges directly attributable to services provided. Def.'s Resp. at 9, ECF 119. In contrast, DC Water asserts that "direct" has no bearing on the amount of recoverable damages, but instead the term "describes the nature

11

of the 'connection' between the provision of 'sanitary sewer services' to the federal government and the 'sanitary sewer works of the District' [which] must be such as to enable 'direct use' by the government of such 'sanitary sewer services.'" Pl.'s Reply at 4, ECF 121. In short, DC Water's argument is that the word "direct" has no bearing on the recoverable damages, but rather refers to the necessarily direct relationship between DC Water and the recipient of its services, AFRH. *Id.*

DC Water has the better argument. The Court agrees that the term "direct" does not act to restrict the amount of damages that may be recovered, but rather describes the necessarily direct relationship between the utility provider and the government entity to whom services are rendered. The language of the statute supports this conclusion. When interpreting a statute, courts must first begin with "the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses legislative purpose." *Schindler Elevator Corp. v. United States*, 563 U.S. 401, 407 (2011) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009)). In the Sewer Mandate, the adjective "direct" immediately precedes the noun "use." D.C. Code § 34-2112(a). The relative positions of these words indicate that "direct" modifies the noun "use" and therefore refers to the immediate relationship of the utility provider to the beneficiary, as opposed to a relationship diverted through a third party. *See Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 278 (2018) (holding that an adjective modified the immediately following noun in a key statutory term).

Further, this interpretation is supported by Congress's inclusion of the next clause of the sentence which separately addresses the value of water and water services as the appropriate yardstick by which payment is measured. D.C. Code § 34-2112(a). When courts interpret the meaning of a statute, they must give meaning to every clause and word of the statute and avoid an interpretation of a word within a clause that would render other provisions of the statute inconsistent, meaningless, or superfluous. *See Setser v. United States*, 566 U.S. 231, 239 (2012); *Duncan v. Walker*, 533 U.S. 167, 174 (2001). To ensure a harmonious interpretation of all clauses of this sentence, "direct" must refer to the relationship between provider and beneficiary, not the nature of the charge, as AFRH contends. Accordingly, the Court rejects AFRH's argument that only fees that are "directly related" to sanitary sewer services provided to the AFRH are implicated by the Entitlement Opinion.

To find otherwise would be contrary to public policy. Limiting charges for the provision of sanitary sewer services would undermine the purpose of DC Water, which is to provide an "adequate water and sewer utility system." D.C. Code § 34-2201.01(2). DC Water has statutory obligations to pay these ancillary charges in its business of lawfully providing water and sewer services to the District and cannot be reasonably expected to absorb the cost of all of these charges incurred in the provision of water and sewer services. *See* Khalil Aff. ¶¶ 15, 18-19, 23-24, 28, ECF 90-1; *Bluefield Waterworks & Imp. Co. v. Pub. Serv. Comm'n of W. Va.*, 262 U.S. 679, 690, 692-93 (1923) (discussing the entitlement of public utilities to set rates that allow returns on business); *Pub. Serv. Comm'n for N.Y. v.*

*Fed. Power Comm'n*, 467 F.2d 361, 370 (D.C. Cir. 1972). Indeed, it is presumably for this reason that Section 207(b) of the 1954 Act expressly contemplates that the Council of the District of Columbia may establish charges as it deems necessary to meet the expense to the District of furnishing services. *See* D.C. Code § 34-2107(b).

Consequently, the Court finds that the statutory scheme does not limit DC Water's recovery to "directly related" charges, as argued by the Government. All direct and "ancillary" costs that are charged to the public may be charged to AFRH as well. Accordingly, DC Water may recover the ancillary charges listed in the 2019 FSCE.[13] The sole remaining question is whether DC Water's apportionment of such fees is appropriate.

AFRH challenges what it calls DC Water's arbitrary apportionment of the fees as attributed fifty percent each to both water and sanitary sewer services. Turning first to metering fees, DC Water seeks fifty percent of the metering fees listed in the 2019 FSCE. Pl.'s Br. at 8-9, ECF 117. AFRH claims that installing these meters is only required for water services. The metering fees, however, are necessary to the provision of sewer services as well. According to DC Water's expert, "[t]he meters are used to measure the amount of water and water services used to determine the charges for sanitary sewer services provided to AFRH by the District of Columbia's wastewater system." Khalil Aff. ¶ 11, ECF 90-1. DC Water uses the measurements as a proxy for sewer service charges. *Id.* The expert also states that "the information provided by the meters is equally necessary to calculate the water and sewer services provided." *Id.* Thus, while it is true that the meters are only directly used to measure water services, the meters are still the yardstick by which DC Water has decided to measure and charge sewage use. As such, they are part of sewer services because without these meters, DC Water would be unable to measure its sewer services and assess charges to its customers. Therefore, because the metering fees are necessary to both the provision of water services and sanitary sewer services, allocating fifty percent of the 2019 FCSE of $8,813.40 to account for sanitary sewer services is reasonable within DC Water's wide discretion to charge its customers. Therefore, the metering fee of $4,406.70 is recoverable.

AFRH similarly challenges DC Water's fifty percent apportionment of the ROW and PILOT fees. Def.'s Resp. at 13-14, ECF 119. However, this time AFRH points to the expert witness testimony that DC Water provided which stated that these fees

> represent the cost owed to the District of Columbia for occupation of the public rights-of-way by water and sewer systems maintained and operated by DC Water, including but not limited to, water mains, separate or combined sanitary and storm sewers, tunnels, appurtenant support facilities and

---

[13] While the Government challenges both the apportionment of the ancillary fees and that the ancillary fees constitute an "amount due" under the FCSE, neither party challenges that the amount requested by DC Water is correctly calculated and included in the 2019 FCSE. Def.'s Resp. at 10-14, ECF 119.

> devices, instruments and structures without regard to their
> surface or subsurface location within the public right-of-way.

Khalil Aff. ¶ 18, ECF 90-1. AFRH argues that the listed systems are related to water services, storm drains, and sewer services, two thirds of which, pursuant to the Entitlement Opinion, DC Water is not entitled to recover. Def.'s Resp. at 13-14, ECF 119. AFRH ignores, however, the language "including but not limited to" in this statement. *Id*. at 13. In fact, the same DC Water expert continues, "I can attest that the ROW [and PILOT] fee is divided equally to represent the division of water and sewer services that occupy the District public rights of way." Khalil Aff. ¶ 22, ECF 90-1. Because it would be burdensome for DC Water to estimate the exact proportion of taxes paid based on the occupation of the public rights-of-way for water and sewer services throughout the District, especially for every individual customer, it is reasonable to divide the fees equally between water and sanitary sewer services. Based on these common-sense principles and the Khalil affidavit, the assignment and apportionment of the ROW and PILOT fees are reasonable and AFRH is obligated to pay $5,685.93 to DC Water.

### IV.   Late Penalties

Finally, DC Water claims that pursuant to D.C. Code § 34-2110(a), it "is authorized to impose an additional charge of 10% for any sanitary sewer service charge remaining unpaid for more than 30 days, and impose a penalty at the rate of 1% per month compounded monthly for any sanitary sewer service charge that remains unpaid for more than 60 days." Pl.'s Br. at 2 n.3, ECF 117. However, AFRH correctly notes that the issue of additional charges for overdue bills was raised for the first time in DC Water's supplemental damages brief. Def.'s Resp. at 12, ECF 119. In the Complaint, DC Water did not seek to recover statutory late fees in its prayer for relief, and did not plead that it had, in fact, imposed such charges. *See* Am. Compl. Accordingly, the Court did not address such fees in the Entitlement Opinion, *see generally DC Water I*, 156 Fed. Cl., and the issue of liability for such fees is not before this Court. Furthermore, even assuming that consideration of these penalties is properly before this Court, Plaintiff has not established entitlement to them.

### CONCLUSION

For the foregoing reasons, Plaintiff District of Columbia Water and Sewer Authority is awarded damages in the amount of $633,150.91. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

_____
PHILIP S. HADJI
Judge